This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Caryle Howe, appeals her conviction in the Lorain County Court of Common Pleas. We affirm.
 I.
Ms. Howe had been Raymond Perry's friend for several years. Apparently, a romantic relationship had developed between Mr. Perry and Ms. Howe. Hence, Ms. Howe was a frequent visitor to Mr. Perry's residence at 70 North Park Street, Oberlin, Ohio.[1]
Ms. Howe was at Mr. Perry's residence on June 29, 1999, as were two of his grandchildren.
In the early evening of June 29, 1999, Ms. Howe left Mr. Perry's home and proceeded to a local convenience store, where she purchased an alcoholic beverage. She then returned to his home and consumed it. An argument ensued about whether Mr. Perry would let Ms. Howe borrow his vehicle for a trip to Lorain the next day. Ms. Howe testified that Mr. Perry struck her and sat atop her for approximately ten minutes in the bedroom of the residence, making it difficult for her to breathe.[2] Ms. Howe scratched Mr. Perry with her fingernails in an attempt to gain her release. Eventually, Mr. Perry released her and she fled toward the door by way of the kitchen, in an apparent attempt to exit the residence. Mr. Perry cut her off, blocking her escape. Ms. Howe grabbed a steak knife from the sink and waved it at Mr. Perry. As he drew closer, she thrust the knife into his chest, penetrating Mr. Perry's chest cavity and the left ventricle of his heart. She withdrew the knife. Mr. Perry retreated out the front door, collapsing on the lawn. Ms. Howe followed and, when he collapsed, she called 9-1-1.
The call to 9-1-1 came in at around 9:00 p.m. An ambulance and officers of the Oberlin Police Department were dispatched to the scene. Patrolman Victor Ortiz of the City of Oberlin Police Department arrived at approximately 9:03 p.m.; the ambulance and Patrolman Glover of the City of Oberlin Police Department arrived shortly thereafter. Mr. Shumate, who lived across the street from Mr. Perry, noticed the police and, after obtaining Officer Ortiz's permission, took Mr. Perry's two grandchildren into his home while the incident at the Perry residence was resolved by the police and paramedics. After advising Ms. Howe of her Miranda rights, Officer Ortiz spoke with Ms. Howe while Mr. Perry was rushed to Allen Memorial Hospital. Ms. Howe told Officer Ortiz that Mr. Perry had slipped and fallen on the knife, as she had also stated in her 9-1-1 call. By just past 9:30 p.m., Mr. Perry had reached Allen Memorial Hospital where the resuscitation efforts begun by the paramedics were continued until just after 10:00 p.m., when Mr. Perry was pronounced dead.
Officer Ortiz did not find Ms. Howe's statements to be credible, took her to the police station, and placed her in a holding cell. During subsequent questioning, Ms. Howe changed her statement, indicating that she had stabbed Mr. Perry. Chief Robert Jones of the Oberlin Police Department, now retired after many decades of service, was concerned that Ms. Howe did not understand the seriousness of her actions and the possibility of being convicted of murder. Hence, he inquired as to her understanding of the seriousness of her conduct. When she responded that she was unclear about the seriousness of her conduct and requested an explanation, Chief Jones explained the possible charges and penalties with reference to the applicable Ohio Revised Code sections.
On August 25, 1999, Ms. Howe was indicted by the Lorain County Grand Jury on one count of involuntary manslaughter, in violation of R.C. 2903.04(A), one count of murder, in violation of R.C. 2903.02(A), and one count of felonious assault, in violation of R.C. 2903.11(A)(1). A jury trial was held, commencing on October 31, 2000 and concluding on November 2, 2000. The jury returned a verdict of guilty on all the counts indicted on November 2, 2000. The trial court duly entered judgment on the jury's verdict in an entry journalized on November 3, 2000. Ms. Howe was sentenced accordingly. This appeal followed.
 II.
Ms. Howe asserts four assignments of error. We will address each in turn.
 A. First Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF SELF-DEFENSE.
Ms. Howe asserts that the trial court erred in failing to give the jury a self-defense instruction upon the request of Ms. Howe. Specifically, she avers that such an instruction was supported by the evidence adduced at trial, and accordingly, that she was entitled to such an instruction by the court. We disagree.
When a defendant has requested a jury instruction on an affirmative defense or objected to the lack of such an instruction "`[t]he proper standard for determining * * * whether a defendant has successfully raised an affirmative defense * * * is to inquire whether the defendant has introduced sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue.'" State v. Palmer (1997),80 Ohio St.3d 543, 564, quoting State v. Melchior (1978), 56 Ohio St.2d 15, paragraph one of the syllabus.
"Under Ohio law, self-defense is an affirmative defense" which the defendant must prove by a preponderance of the evidence.State v. Williford (1990), 49 Ohio St.3d 247, 249. To establish self-defense where one has used deadly force, a defendant must prove, by a preponderance of the evidence, that
 "* * * (1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [sic] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * *"
(Alterations and omissions original.) Id., quoting State v.Robbins (1979), 58 Ohio St.2d 74, paragraph two of the syllabus. The failure of proof on any one of these elements negates the assertion of self-defense. Williford, 49 Ohio St.3d at 249. Further, "[i]n most circumstances, a person may not kill in self-defense if he has available a reasonable means of retreat from the confrontation"; however, "there is no duty to retreat from one's home." Id. at 250.
Here, Ms. Howe failed to establish a fear of imminent death or great bodily injury. She testified that she was frightened and scared. When asked if she intended to kill Mr. Perry, she responded that she did not and that it was an accident. When asked "you had absolutely no reason on that date to kill him, right?," she responded "No, not really. I really had no reason. I was just trying to get him off me, that's all. When he ran up on me -[.]" Further, when she was asked "And in fact, you're telling these ladies and gentlemen today that it wasn't really in self-defense, it was an accident. That's what you said, isn't it?" she responded that "It was an accident." Ms. Howe adduced evidence that she was frightened but not that she feared for her life or feared great bodily harm. She may have feared that he would "beat [her] up again or grab [her] or knock [her] to the floor," but none of these rise to the level of fear of great bodily injury or death. Further, "[t]he defenses of accident and self-defense are inconsistent by definition." State v. Barnd
(1993), 85 Ohio App.3d 254, 260. While accident "involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act," one claiming self-defense "concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions." Id. Hence, while courts may occasionally find instruction on both defenses to be warranted in cases presenting certain factual scenarios, the case herein does not present such a factual scenario. Accordingly, we can find no error in the trial court's failure to instruct on self-defense. Ms. Howe's first assignment of error is overruled.
 B. Second Assignment of Error APPELLANT WAS DENIED DUE PROCESS OF LAW IN VIOLATION OF RIGHTS CONFERRED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, WHEN THE PROSECUTION REFERRED TO MATTERS NOT IN EVIDENCE, AND IMPROPERLY REFERRED TO APPELLANT'S PREVIOUS PARTICIPATION IN A STABBING.
Ms. Howe avers that the prosecutor's question regarding Ms. Howe's previous involvement in a stabbing represented prosecutorial misconduct that deprived Ms. Howe of a fair trial. We disagree.
In reviewing allegations of prosecutorial misconduct, this court must bear in mind that the "`touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.'"State v. Hill (1996), 75 Ohio St.3d 195, 203, quoting Smith v.Phillips (1982), 455 U.S. 209, 219, 71 L.Ed.2d 78, 87. Prosecutorial misconduct will not serve as grounds for reversal unless the defendant was denied a fair trial. State v. Maurer
(1984), 15 Ohio St.3d 239, 266. The defendant must prove that the prosecutor's comments were improper and that they prejudicially affected his or her substantial rights. State v. Smith (1984),14 Ohio St.3d 13, 14.
In a motion in limine filed on June 26, 2000, Ms. Howe requested that the prosecution be precluded from adducing evidence at trial regarding a stabbing that she had been involved in nearly ten years prior to the stabbing herein. The trial court indicated at trial that the motion had been granted and that the prosecution was precluded from inquiring into that incident, which apparently had never resulted in charges against Ms. Howe. However, the prosecution asked "But, Ms. Howe, you would agree with me, wouldn't you, that back on 11-12-90, when you stabbed somebody else — ___," at which point, he was interrupted by an objection by Ms. Howe's defense counsel.
The trial court did not explicitly instruct in regard to this issue but did provide the jury with written jury instructions which informed the jury as to the weight of such comments and whether they should be considered in reaching a verdict. Specifically, the trial court instructed the jury "not [to] speculate as to why the Court sustained the objection to any question or what the answer to such question might have been." Further, the trial court instructed the jury that they "must not draw any inference or speculate on the truth of any suggestion included in a question that was not answered." The trial court's oral instructions to the jury were substantially similar. The prosecutor's question, which was objected to and never answered, clearly fit within what the jury "must not draw any inference" from and must not "speculate" regarding. "A jury is presumed to follow the instructions given to it by the trial judge." State v.Stallings (2000), 89 Ohio St.3d 280, 286. Accordingly, due to the limited nature of the prosecutor's comment and the trial court's instructions to the jury, we cannot find that Ms. Howe was denied a fair trial or that her substantial rights were prejudicially affected. Ms. Howe's second assignment of error is overruled.
 C. Third Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ENTERED JUDGMENT OF CONVI[C]TION ON THE CHARGE OF MURDER, WHERE SUCH JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Ms. Howe argues that her conviction was against the manifest weight of the evidence. She asserts that the jury clearly lost its way and carried out a manifest miscarriage of justice in convicting her. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Although Ms. Howe was convicted of involuntary manslaughter, murder, and felonious assault, she was only sentenced on the murder charge as the crimes were of similar import. Hence, she challenges only her murder conviction as being against the manifest weight of the evidence.
To support a conviction of murder, the state must show that one "purposely cause[d] the death of another[.]" R.C. 2903.02(A). One acts purposely "when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
Ms. Howe asserts that the state failed to show that she acted purposely. Although she claimed at trial that the stabbing was an accident, she indicated that she had moved the knife in a manner that resulted in it penetrating Mr. Perry's chest and heart. Further, Ms. Howe admitted that she had stabbed Mr. Perry, and the evidence clearly demonstrated that he died as a result of the wound. Moreover, testimony adduced at trial indicated that such a deep stab wound would require some degree of force.
 [A]n intent to kill may be presumed where the natural and probable consequence of a wrongful act is to produce death, and such intent may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.
State v. Robinson (1954), 161 Ohio St. 213, paragraph five of the syllabus. Hence, we cannot conclude that the jury lost its way or carried out a manifest miscarriage of justice when it found Ms. Howe guilty of murder. Ms. Howe's third assignment of error is overruled.[3]
 D. Fourth Assignment of Error THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE STATE'S CASE AND AT THE CLOSE OF THE EVIDENCE.
Ms. Howe avers that, construing the facts in a light most favorable to the state, the prosecution failed to show that she had acted purposely. Hence, she asserts that her conviction was supported by insufficient evidence as a matter of law and the trial court erred in failing to grant her Crim.R. 29 motion for acquittal. We disagree.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
The law applicable to our analysis here was recited above in our analysis of manifest weight. Viewing the evidence in a light most favorable to the prosecution, Ms. Howe grabbed a steak knife from the sink and sunk it into Mr. Perry's chest. The knife penetrated over three inches into his chest, entering the left ventricle of his heart. As noted above,
 an intent to kill may be presumed where the natural and probable consequence of a wrongful act is to produce death, and such intent may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.
Robinson, 161 Ohio St. at paragraph five of the syllabus. Certainly, one may infer the intent to purposely cause death from the facts herein. Ms. Howe thrust a steak knife into Mr. Perry's chest. Hence, we cannot find her conviction to have been based on insufficient evidence. Ms. Howe's fourth assignment of error is overruled.
 III.
Ms. Howe's assignments of error are overruled. The verdict of the Lorain County Court of Common Pleas is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ______________________ WILLIAM G. BATCHELDER
SLABY, J. CONCURS
[1] Ms. Howe avers that she had taken up residence with Mr. Perry.
[2] Jamarea Grant, one of Mr. Perry's grandchildren who was present in the residence at the time of the incidents at issue herein, testified that she had witnessed the stabbing but that Mr. Perry had never struck Ms. Howe.
[3] Ms. Howe also avers in her argument relating to this assignment of error that the jury instructions were erroneous and incomplete. We presume this argument relates back to her argument regarding the lack of a self-defense instruction as no indication is given as to the basis of her argument in this assignment of error. Accordingly, we find this argument to lack merit as we previously addressed the trial court's decision to omit a jury instruction regarding self-defense and found such omission not to constitute error.