JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Frederick Talley ("defendant"), appeals following his convictions and sentence for murder, felonious assault, firearm specifications, and having a weapon while under disability. Defendant challenges various procedural rulings, the performance of his counsel, and the sentence imposed. For the reasons that follow, we affirm.
 {¶ 2} On June 7, 2005, Cleveland police responded to a call at 3369 E. 123 Street. Lindell Benson ("Benson"), a resident of the home, was found on the second floor with a gunshot wound. He was taken to the hospital where he was pronounced dead. The Cuyahoga County Coroner ruled his death a homicide that resulted from the gunshot wound to the chest. The forensic pathologist further noted a laceration of the victim's scalp.
 {¶ 3} Several witnesses, including other residents of the home, testified that defendant shot Benson. They stated the two had ongoing arguments and defendant had just returned to the house that day after Benson had previously thrown him out. It was established that the defendant and Benson lived and worked together and that defendant made comments to various people that either he would kill Benson or be killed by him. None of the witnesses took him seriously, since Benson was defendant's uncle.
 {¶ 4} Defendant was known to carry a firearm, which he occasionally fired at will and for no apparent reason. Eyewitnesses testified that defendant had a loaded weapon in his possession on June 6, 2005 as he began, and continued, drinking at the residence with another houseguest, Reginald Hayes ("Hayes"). Sometime around 11:00 p.m. defendant went to his bedroom to sleep. Hayes testified that he heard Benson return to the house around 2:00 a.m. Benson spoke with Hayes and then proceeded to knock on defendant's door for ten minutes. Hayes then heard the door open and a shot fired. Hayes stated he did not hear any fighting or discussion prior to the gunshot. Hayes testified that defendant offered no explanation for the shooting beyond "I told him to quit messing with me."
 {¶ 5} Defendant then instructed Hayes to get the third floor resident, who happened to be Benson's twin brother Lydell. Lydell ran down to find Benson lying face down on the floor barely breathing and ordered the other residents to call 911. When Lydell asked defendant why he had shot Benson, defendant merely shrugged.
 {¶ 6} Defendant proceeded to go to the first floor unit where he put on some clothes and fled the scene. Defendant lost the weapon while fleeing police. Days later, police arrested defendant without incident.
 {¶ 7} Defendant gave a written statement including that Benson was knocking on his door and that he had his pistol when he opened the door. According to defendant, Benson kept saying he wanted defendant out of the house. When defendant tried to close the door, Benson pushed the door open and "came at" him causing defendant to hit Benson in the head with the pistol. Defendant then pointed the gun at Benson and told him to leave. Instead, defendant claims, Benson tried to hit the gun, which caused it to fire. Accordingly, defendant maintained that Benson's death was an accident.
 {¶ 8} Between the shooting of Benson and trial, defendant contacted various witnesses by phone and through correspondence, which were submitted at trial. Several witnesses verified that defendant requested them to pick him up and/or take him somewhere else that evening. They had all declined on the belief that defendant would not act on his threats.
 {¶ 9} The trial court denied defendant's motion for acquittal and the jury found him not guilty of aggravated murder but guilty of murder, felonious assault, and firearm specifications. The court then found defendant guilty of the bifurcated count of having a weapon while under disability. The court imposed the following sentence: 15 to life on the murder count to be merged with an 8-year term for felonious assault, a 5-year term for having weapons while under disability, and a 3-year firearm specification to run consecutive to each other and the murder count. We will address defendant's assignments of error in the order presented but together where appropriate for discussion.
 {¶ 10} "I. The trial court erred in denying appellant's motion for acquittal as to the charges when the State failed to present sufficient evidence to sustain a conviction."
 {¶ 11} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the State. State v.Dennis (1997), 79 Ohio St.3d 421, 430, 1997-Ohio-372.
 {¶ 12} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. We must determine whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380,386, 1997-Ohio-52.
 {¶ 13} Defendant asserts there was insufficient evidence that he acted purposely or knowingly or that he hit Benson with the gun. Accordingly, he believes his convictions must be vacated.
 {¶ 14} Defendant was convicted by the jury of murder pursuant to R.C. 2903.02(B) and felonious assault.
 {¶ 15} R.C. 2903.02(B) provides:
 {¶ 16} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or2903.04 of the Revised Code." Felonious assault with a weapon can serve as the underlying offense for purposes of the felony murder statute. State v. Miller, 96 Ohio St.3d 384, 2002-Ohio-4931, syllabus ("Felony murder as defined in R.C. 2903.02(B), with the underlying offense of violence being felonious assault, is supported by evidence that establishes that the defendant knowingly caused physical harm to the victim.")
 {¶ 17} R.C. 2903.11(A)(1) provides:
 {¶ 18} "(A) No person shall knowingly do either of the following:
 {¶ 19} " (1) Cause serious physical harm to another or to another's unborn;"
 {¶ 20} Here, the record contained evidence including that defendant opened his bedroom door after arming himself with a weapon and knowing Benson was on the other side; defendant hit Benson in the head with the gun; Benson had a laceration on his head; defendant admitted he pointed a gun at Benson; Benson suffered a fatal gunshot wound; and defendant, who carried a loaded firearm on his person made several comments that either he would kill Benson or Benson would kill him. Accordingly, there was sufficient evidence to support defendant's convictions for felonious assault and felony murder.
 {¶ 21} Assignment of Error I is overruled.
 {¶ 22} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 23} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins, supra at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387.
 {¶ 24} Defendant generally maintains that his convictions were against the weight of the evidence.
 {¶ 25} In addition to the sufficiency of the evidence, the weight of the evidence in the record supports defendant's convictions. Although defendant asserted Benson's murder was an accident, there is no evidence beyond defendant's own statement that would support this theory. Hayes testified that he did not hear any fighting or arguing prior to the gunshot being fired. Further, all of the witnesses testified that Benson was unarmed. The Cuyahoga County Coroner's supervisor for trace evidence testified that tests he performed on Benson yielded no gunshot residue or trace metals that would indicate contact with a weapon as alleged by defendant.
 {¶ 26} The forensic pathologist testified that Benson's head laceration would be consistent with being hit in the head with a gun. While he also conceded it could have occurred as a result of falling, the witnesses consistently testified that Benson was found on his stomach. There is no indication that the jury clearly lost its way in assessing the evidence such that a felonious assault conviction could be considered as being against the weight of the evidence.
 {¶ 27} Assignment of Error II is overruled.
 {¶ 28} "III. The trial court abused its discretion and denied appellant his right to the effective assistance of counsel when it failed to make an adequate inquiry into appellant's complaint about his trial counsel and had appellant proceed with the same attorney."
 {¶ 29} This assignment of error lacks merit. Before the trial, defendant requested the trial court appoint him new counsel because he believed one of his attorneys was being racist.
 {¶ 30} Defendant alleges the trial court failed to make an inquiry into the effectiveness of his counsel and thus abused its discretion. See State v. Smith, Cuyahoga App. 83973,2004-Ohio-6106.
 {¶ 31} The trial court immediately and thoroughly addressed defendant's accusation. The court conducted a prompt inquiry, which included the following:
 {¶ 32} "THE COURT: * * * What did he say to you that could possibly make him a racist?
 {¶ 33} "THE DEFENDANT: None. Nothing.
 {¶ 34} "THE COURT: If he gives you some legal advice that you might not like, that doesn't make him a racist, it just makes him a lawyer. * * *
 {¶ 35} "THE DEFENDANT: He's calling me stupid." (Tr. 8.)
 {¶ 36} Defendant offered nothing else in support of his claim. Accordingly, the trial court appropriately addressed the complaint and did not abuse its discretion in resolving the issue by declining to appoint new counsel.
 {¶ 37} Assignment of Error III is overruled.
 {¶ 38} "IV. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when one of his attorneys was under the influence of drugs during the trial.
 {¶ 39} "V. Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I, of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to request a jury instruction on self-defense."
 {¶ 40} In order to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 668. Appellate review of counsel's performance must be highly deferential. Id.
 {¶ 41} Defendant contends he was denied effective assistance of counsel when the trial court replaced one of his two court appointed attorneys. Defendant, however, fails to allege any errors committed by either the removed or replaced counsel that negatively effected the outcome of his trial. Further, the court and defense counsel fully advised defendant of his rights and option to request a mistrial. Defendant agreed to the substitution of counsel, declined the option of mistrial, and was granted a continuance.
 {¶ 42} Assignment of Error IV is overruled.
 {¶ 43} Next, defendant contends his attorneys provided ineffective assistance of counsel by not requesting a jury instruction on the theory of self-defense.
 {¶ 44} This Court has previously acknowledged that in order to show that a lawyers' conduct was unreasonable, defendant must overcome the presumption that they provided competent representation, and show that their actions were not trial strategies prompted by "reasonable professional judgment." Statev. Freeman (Dec. 14, 2000), Cuyahoga App. No. 76906, citingStrickland, supra.
 {¶ 45} Defense counsel explained on the record their intent and strategy to pursue a theory of accident rather than one of self-defense in this case. While some cases may warrant dual instructions on the defenses of self-defense and accident, they are by definition inconsistent theories. State v. Howe (July 25, 2001), Lorain App. No. 00CA007732, citing State v. Barnd
(1993), 85 Ohio App.3d 254, 260. "Accident involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act. In contrast, a defendant claiming self-defense concedes he had the purpose to commit the act, but asserts that he was justified in his actions. The Supreme Court of Ohio has considered this paradox and stated: `Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force * * * is exactly the contrary, wholly unintentional and unwillful.'" Barnd,85 Ohio App.3d at 260, quoting State v. Champion (1924), 109 Ohio St. 281,286-287. Because defendant claimed Benson's death was an accident and none of the evidence suggested that he acted in self-defense, he was not denied effective assistance when his counsel did not request a self-defense jury instruction.
 {¶ 46} Assignment of Error V is overruled.
 {¶ 47} "VI. The trial court erred by giving a jury instruction on flight which denied appellant's right to a fair trial."
 {¶ 48} It is improper to give a jury instruction on flight that impermissibly requires the defendant to "satisfactorily explain" his actions. State v. Fields (1973),35 Ohio App.2d 140. However, a flight instruction is permissible if "sufficient evidence exists in the record to support the charge" and it does not require the defendant to satisfactorily explain it. State v.Charley, Cuyahoga App. No. 82944, 2004-Ohio-3463.
 {¶ 49} The flight instruction given in this case is the same as the one approved by this Court in Charley and unlike the one at issue in Fields, which explicitly provided that flight tended to show a consciousness of guilt" unless [the flight was]satisfactorily explained." Fields, 35 Ohio App.2d at 145. The trial court did not abuse its discretion by including a flight instruction based on the evidence in this case and the instruction it gave did not infringe upon defendant's Fifth andFourteenth Amendment rights.
 {¶ 50} Assignment of Error VI is overruled.
 {¶ 51} "VII. The trial court erred by refusing to instruct the jury on the lesser included offense of reckless homicide which denied appellant's right to a fair trial."
 {¶ 52} "[A] criminal defendant is entitled to an instruction on a lesser included offense whenever the trial court: (1) determines that the offense on which the instruction is requested is necessarily lesser than and included within the charged offense, * * *, and (2) after examining the facts of the case, ascertains that the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." State v. Johnson (1988)36 Ohio St.3d 224, 225.
 {¶ 53} In this case, defendant requested a reckless homicide instruction as a lesser included offense of felony murder, which it is. State v. Hunter, Cuyahoga App. No. 86048, 2006-Ohio-20, ¶ 60. The difference between the offenses is the mens rea. Felony murder requires proof that defendant acted knowingly, while reckless homicide requires proof of recklessness. "One acts knowingly, regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person acts recklessly, however, when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. R.C. 2901.22(C)." Id.
 {¶ 54} A charge of reckless homicide is not warranted where the evidence does not reasonably support both an acquittal of felony murder and reckless homicide. Id., citing State v.Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
 {¶ 55} Here, defendant intentionally picked up his firearm before confronting Benson at the door. The record includes evidence that defendant maintained the gun in his possession throughout the evening prior to Benson's death and that he made repeated comments that he might kill Benson. Accordingly, the trial court did not abuse its discretion by declining to give a jury instruction on the lesser included offense of reckless homicide.
 {¶ 56} Assignment of Error VII is overruled.
 {¶ 57} "VIII. The trial court erred by improperly instructing the jury on murder and felonious assault and improperly answering the jury's question which denied appellant's right to a fair trial."
 {¶ 58} Defendant challenges the trial court's instructions concerning felonious assault and felony murder. Defendant maintains that the trial court improperly charged the jury concerning the elements necessary to return a conviction relative to the felonious assault charged under count three of the indictment. Specifically, defendant argues that the trial court improperly instructed the jury that it could return a guilty verdict on count three if it found that defendant attempted or caused physical harm to Benson by means of a deadly weapon. However, the instructions specific to the felonious assault charge under count three correctly instructed the jury. The felony murder count was based on an appropriate underlying offense, i.e., felonious assault that could be proved through evidence that defendant knowingly caused or attempted to cause serious physical harm to Benson and/or caused or attempted to cause physical harm to Benson by means of a deadly weapon. Statev. Miller, 96 Ohio St.3d 384, 2002-Ohio-4931, syllabus.
 {¶ 59} While the trial court made certain misstatements while instructing the jury, it promptly corrected them. For example, the court improperly stated that felonious assault was the underlying felony on the aggravated murder count but quickly clarified that it was the underlying charge on the felony murder count. Instructions to a jury "may not be judged in artificial isolation but must be viewed in the context of the overall charge." State v. Price (1979), 60 Ohio St.2d 136, paragraph four of the syllabus. Taken as a whole, we find that the trial court's instructions effectively advised the jury on the charged offenses.
 {¶ 60} Assignment of Error VIII is overruled.
 {¶ 61} "IX. The trial court erred by ordering convictions for separate counts of murder with a firearm specification and having weapon while under disability to be served consecutively because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14."
 {¶ 62} Defendant contends that having weapons while under disability is an allied offense of similar import to a firearm specification. This exact argument has been considered and rejected by this Court. State v. Williams, Cuyahoga App. No. 81949, 2003-Ohio-3950; accord State v. Whittsette (Feb. 13, 1997), Cuyahoga App. No. 70091, citing State v. Blankenship
(1995), 102 Ohio App.3d 534, 547; see, also, State v. Whitmore
(Dec. 14, 1989), Cuyahoga App. No. 56411.
 {¶ 63} Assignment of Error IX is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, J., and Corrigan, J., Concur.